# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOPETON WIGGAN,<br>        Petitioner, | No. 3:15-cv-447 (SRU) |
| v. | |
| UNITED STATES OF AMERICA<br>        Respondent. | |

## RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

On March 27, 2015, Hopeton Wiggan filed a petition to vacate, set aside, or correct his sentence under section 2255 of Title 28 of the United States Code ("section 2255"). *See* Mot. to Vacate (doc. # 1). Wiggan has since amended his petition twice, so I now consider the third amended petition. *See* Am. Mot. to Vacate (doc. # 15) ("Amended Petition").

In the Amended Petition, Wiggan claims that the sentence he received is invalid because he received a mandatory sentence enhancement based on a provision in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), that was declared unconstitutional in *Johnson v. United States*, —— U.S. ——, 135 S. Ct. 2551 (2015) ("*Johnson*"). The government opposes the Motion on the ground that Wiggan has at least three qualifying convictions notwithstanding *Johnson*'s effect.

For the reasons set forth below, the Amended Petition is granted, the sentence vacated, and the case will be set down for resentencing.

## I.      Standard of Review

Section 2255 provides a prisoner in federal custody an opportunity to challenge the legality of his or her sentence. To obtain relief under section 2255, the petitioner must show that his or her prior sentence was invalid because: (1) it was imposed in violation of the Constitution

or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) it exceeded the maximum detention authorized by law; or (4) it is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  The standard is a high one; even constitutional errors will not be redressed through a section 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless error standard to section 2255 petition).

A section 2255 petition "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)).  Such limitation prohibits relitigation of issues that were expressly or impliedly decided on direct appeal.  *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir. 2001).  A court may only reconsider an earlier decision if it is "confronted with 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

Furthermore, a section 2255 petition is not intended to be a substitute for a direct appeal. *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,* 506 F3d 162, 166 (2d Cir. 2007)).  A court will not review claims that the petitioner failed to properly raise on direct review "unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence . . . ."  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court is not required to accept the petitioner's factual assertions as credible "where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2009). Section 2255 also requires that the district court hold a hearing on the petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) ("[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim") (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

## II.   Background

### A.   Indictment and Plea

On February 25, 2009, a grand jury returned an indictment charging Hopeton Wiggan with one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).[1] *See United States v. Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 1). The government sought an enhanced penalty under the ACCA, which assigns a fifteen-year mandatory minimum sentence to a defendant who has three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). The indictment alleged that Wiggan had the following prior felony convictions:

---

[1] Wiggan was also charged with possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Indictment, *Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 1).

(1) Possession of narcotics on April 22, 1996, in violation of Connecticut General Statutes § 21a-279(a);[2]

(2) Conspiracy to commit robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4);

(3) Robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4);

(4) Sale of narcotics on November 5, 1999, in violation of Connecticut General Statutes § 21a-277(a);

(5) Conspiracy to commit robbery in the second degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-135;

(6) Robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4); and

(7) Assault in the second degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-60a.[3]

Indictment, *Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 1).

On January 14, 2011, while represented by Attorney Ronald Resetarits, Wiggan pleaded guilty to violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4]  The parties stipulated as part of

---

[2] This conviction does not affect the analysis of Wiggan's petition, so I do not analyze it.

[3] Both briefs discuss Wiggan's assault on a peace officer as a violation of section 53a-167c(a)(1).  The indictment only lists assault in the second degree in violation of section 53a-60a; it does not mention Wiggan's conviction for assault on a peace officer.  *See* Indictment, *Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 1).  The plea agreement also makes no mention of the section 53a-167c conviction.  Plea Agreement, *Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 119).  The presentence report, however, lists the conviction for assault on a peace officer, though it does not list the specific statute.  Presentence Report at ¶ 32, *Wiggan*, No. 3:09-cr-0051 (SRU) (doc. # 141).  Although section 53a-167c(a)(1) is not listed by name in the indictment or in the presentence report, the Second Circuit affirmed Wiggan's conviction, based in part, on the fact that "Wiggan pled guilty to . . . one count of assault on a peace officer in violation of section 53a-167c."  *United States v. Wiggan*, 530 F. App'x. 51, 56-57 (2d Cir. 2013).  Though the identification of the assault on a peace officer conviction could have been clearer, the parties, citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998), agree that there has been no legal error.  Although I am less sanguine about the continued vitality of *Almendarez-Torres*, I need not decide an issue not raised by the parties. *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 n.1 (2013) (declining to revisit *Almendarez-Torres* when not raised by the parties).

the plea agreement that Wiggan had been convicted of at least three violent felonies as defined by 18 U.S.C. § 924(e)(2)(B):

(1) Conspiracy to commit robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4);

(2) Robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4);

(3) Conspiracy to commit robbery in the second degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-135; and

(4) Robbery in the first degree on November 5, 1999, in violation of Connecticut General Statutes § 53a-134(a)(4).

Supp. Mem. in Support of Section 2255 Habeas Corpus Pet. 2.

On January 24, 2012, Attorney Justin Smith became counsel for Wiggan. On May 21, 2012, Attorney Smith filed a supplemental memorandum arguing that Wiggan was not subject to the ACCA's enhanced sentencing provision.[5]

B. Sentencing

At Wiggan's sentencing on June 1, 2012, I found four of Wiggan's convictions were qualifying offenses under the ACCA: two robbery convictions in the first degree; assault on a peace officer;[6] and, conspiracy to commit robbery in the first degree.[7] Because there were at

---

[4] The government agreed to dismiss the marijuana count. Amended Petition at ¶ 2.

[5] Attorney Smith noted that he and Wiggan disagreed with respect to whether Wiggan's convictions for robbery in the first degree qualified as violent felonies. Smith conceded that Wiggan's convictions might count as predicate felonies, but Wiggan disagreed and filed a separate brief addressing that issue.

[6] At the time, I did not clarify what I relied upon to determine that Wiggan's assault on a peace officer was a violent felony. Sentencing Hr'g Tr. at 40, *United States v. Wiggan*, No. 3:09-cr-51 (SRU) (doc. # 151).

[7] I specifically referred to subsection (ii) of section 924(e)(2)(B) when I held that conspiracy to commit robbery in the first degree was a violent felony: "We have as an element of what Mr. Wiggan pled guilty to a step in furtherance of a violent felony that necessarily presents a serious potential risk of physical injury to another, and

5

least three predicate felonies, I declined to decide whether conspiracy to commit robbery in the second degree qualified as a violent felony.  I then imposed the mandatory minimum sentence of 180 months required by the ACCA.

    C.  <u>Direct Appeal</u>

      On June 13, 2012, Wiggan filed a Notice of Appeal to the Second Circuit Court of Appeals, arguing that none of the four convictions I found to be violent felonies qualified under the ACCA.  The Second Circuit addressed the two convictions for robbery in the first degree, holding, "[F]irst degree robbery under Connecticut law falls squarely within the first prong of the definition of 'violent felony,' which covers offenses having 'as an element the use, attempted use, or threatened use of physical force against the person of another.'"  *United States v. Wiggan*, 530 F. App'x. 51, 57 (2d Cir. 2013).  The Second Circuit then addressed the conviction for assault on a peace officer.  The Court held that the conviction under § 53a-167c(a)(1) was categorically a violent felony in accordance with *United States v. Brown*, 629 F.3d 290, 296 (2d Cir. 2011), which held that the conviction qualified under the portion of section 924(e)(2)(B)(ii) that is referred to as the "Residual Clause."  *Id.* at 57-58.  Because the court had already identified three predicate felonies, it declined to address the conspiracy to commit robbery convictions.  *Id.* at 56.  On March 24, 2014, the Supreme Court denied Wiggan's petition for writ of certiorari.  *See Wiggan v. United States*, 134 S. Ct. 1565 (2014).

    D.  <u>Section 2255 Petition</u>

      On March 27, 2015, Hopeton Wiggan filed his initial section 2255 petition.  *See* Mot. to Vacate (doc. # 1).  On June 26, 2015, the Supreme Court of the United States decided *Johnson v.*

---

accordingly I conclude that the conviction . . . is a violent felony for purposes of ACCA."  Sentencing Hr'g Tr. at 41-42, *United States v. Wiggan*, No. 3:09-cr-51 (SRU) (doc. # 151).

*United States*, ––– U.S. ––––, 135 S. Ct. 2551 (2015) ("*Johnson*"), holding that the Residual Clause was unconstitutionally vague.  Following that decision, Wiggan filed a motion to amend/supplement his pending motion to include a claim that, after *Johnson*, conspiracy to commit robbery in the first degree, conspiracy to commit robbery in the second degree, and assault on a peace officer no longer qualified as violent felonies under the ACCA.  I granted Wiggan's motion to amend.  Order Granting Mot. to Am. Pet. (doc. # 8).

After I appointed counsel to represent him, Wiggan filed another amended petition, followed by a memorandum in support of the amended petition.  *See* Amended Petition; Mem. in Support of Am. Mot. to Vacate (doc. # 21).  On May 12, 2016, the Office of the Federal Defender submitted an *amicus curiae* memorandum in support of the Amended Petition.  *See* Mem. in Support of the Am. Mot. to Vacate (*Amicus Curiae*) (doc. # 25) ("Amicus Brief").  The government responded to all arguments raised on behalf of Wiggan in their memorandum in opposition, filed on May 19, 2016.  *See* Gov't Resp. to Am. Mot. to Vacate (doc. # 26) ("Gov't Resp.").

## III.   Discussion

Wiggan contends that his sentence was imposed in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.  Amended Petition at ¶ 12.  Specifically, Wiggan argues that the legality of his prior sentence was upheld based on the Second Circuit's determination that one of his convictions qualified under the ACCA's Residual Clause, which has since been declared unconstitutional, s*ee Johnson v. United States*, ––– U.S. ––––, 135 S. Ct. 2551 (2015); *see also Welch v. United States*, ––– U.S. ––––, 136 S. Ct. 1257, 1268 (2016) (applying *Johnson* retroactively to cases on collateral review).  The government does not contest that *Johnson* applies retroactively to Wiggan's case, nor can it earnestly contest that the Second

7

Circuit upheld Wiggan's prior sentence based on its determination that his conviction for assault on a peace officer qualified as a violent felony under the Residual Clause. C*f. Wiggan*, 530 F. App'x at 58 (relying on authority interpreting the Residual Clause).

In response, the government has raised what amounts to a harmless error defense. Gov't Resp. at 6; *see also Brecht*, 507 U.S. at 623. It argues that Wiggan's conviction is unaffected by *Johnson* because he has at least three prior convictions that otherwise qualify under section 924(e)(2)(B) notwithstanding the unconstitutionality of the Residual Clause. In other words, even if Wiggan can show that he was sentenced under the Residual Clause in violation of the Constitution, he is unable to show "actual prejudice" because his prior convictions still render him eligible for the ACCA enhancement. *See Brecht*, 507 U.S. at 623; *Underwood*, 166 F.3d at 87 (applying *Brecht*'s harmless error standard to section 2255 petition).

To evaluate Wiggan's Amended Petition, I must begin by determining whether the original sentence imposed was unconstitutional. 28 U.S.C. § 2255(a). If I determine that Wiggan was sentenced in an unconstitutional manner, I must then assess whether the error had a "substantial and injurious effect" resulting in "actual prejudice" to him. *See Brecht*, 507 U.S. at 623; *Underwood*, 166 F.3d at 87.

A. Constitutionality of Wiggan's Prior Sentence

In determining the constitutionality of Wiggan's prior sentence, I first explain the procedure for sentencing a defendant under the ACCA, including *Johnson*'s effect on that process. Next, I evaluate whether, under *Johnson*, Wiggan was sentenced in an unconstitutional manner.

1.   *Armed Career Criminal Act ("ACCA")*

The Armed Career Criminal Act provides that when a person violates 18 U.S.C. § 922(g)(1) and has three previous convictions "for a violent felony, or a serious drug offense, or both, committed on occasions different from one another," that person is subject to a mandatory minimum sentence of fifteen years.  18 U.S.C. § 924(e)(1).  The term "violent felony" indicates any crime punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B)(i-ii).  Subsection (i) is commonly referred to as the "Elements Clause" because, in order to qualify under that subsection, "the use, attempted use, or threatened use of physical force" must be an element of the statute defining the crime of which the defendant was previously convicted.  *See Villanueva v. United States*, 2016 WL 3248174, at *1 (D. Conn. June 6, 2016).  The first half of subsection (ii) is referred to the "Enumerated Felonies Clause" because it lists four specific types of crimes that qualify as violent felonies.  *Id.*  The second half of subsection (ii) is referred to as the "Residual Clause" because it has traditionally encompassed felonies that were considered violent notwithstanding the fact that they do not fall into either the Elements Clause or the Enumerated Felonies Clause.   *Id.*

It is the government's burden to establish whether a prior conviction qualifies under section 924(e)(2).  *See United States v. Rosa*, 507 F.3d 142, 151 (2d Cir. 2007) (quoting *United States v. Brown*, 52 F.3d 415, 425 (2d Cir. 1995)).  If the government meets that burden, the conviction is referred to as a "qualifying conviction."

2.   *Categorical and Modified Categorical Approach*

To determine whether a prior conviction is a qualifying conviction, the court must engage in what is referred to as "the categorical approach." *See Taylor v. United States*, 495 U.S. 575, 599 (1990).  Under the categorical approach, the court must "identify 'the minimum criminal conduct necessary for conviction under a particular statute.'"   *United States v. Hill*, —— F.3d ——–, 2016 WL 4120667, at *3 (2d Cir. Aug. 3, 2016).  The court may only examine the elements contained in the statutory definition of the predicate offense—not the underlying facts of conviction—to determine whether the conviction meets the criteria of a certain category of offense.  *Taylor*, 495 U.S. at 577.  Elements are the "'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (quoting Black's Law Dictionary 634 (10th ed. 2014)). Facts, however, are "mere real-world things—extraneous to the crime's legal requirements."  *Id.* If a person can be convicted under the statute without engaging in conduct that is categorically violent, a conviction under that statute cannot serve as a qualifying conviction under the categorical approach.  *Descamps v. United States*, —— U.S. ——–, 133 S. Ct. 2276, 2288 (2013).

There are, however, a "narrow range of cases" in which a court may look "beyond the statutory elements" of the crime to determine whether it is a qualifying conviction under the ACCA.  *Descamps*, 133 S. Ct. at 2283-84.  When a statute defines a crime by listing alternative elements, sentencing courts employ what is referred to as the "modified categorical approach" to discern which of the alternative elements is integral to the defendant's conviction.  *Mathis*, 136 S. Ct. at 2249.  Under that approach, courts look to a limited class of documents to determine "what crime, with what elements, a defendant was convicted of" before comparing that crime's elements to those of the generic offense.  *Id.*; *see Shepard v. United States*, 544 U.S. 13, 23 (2005) (identifying which documents may be considered).

In *Taylor*, the Court explained the application of the modified categorical approach by analyzing a hypothetical state burglary statute to determine whether it qualified as a generic burglary conviction under the Enumerated Felonies Clause of the ACCA. *Taylor*, 495 U.S. at 602. The Court hypothesized a burglary statute that contained alternative elements in the definition of the crime. Specifically, the statute prohibited entering either a "building" or an "automobile" for the purpose of committing a crime. In order for a defendant to be convicted under the statute, the prosecutor must charge (and the jury must find) that the defendant entered a particular location (either building or automobile). The Court noted that "[o]ne of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not." *Descamps*, 133 S. Ct. at 2284 (describing Court's analysis in *Taylor*).

Depending on what the jury found—or to which the defendant admitted in the plea agreement or plea colloquy—the defendant's conviction would necessarily fall categorically within or outside of the generic definition of burglary. In such situations, a sentencing judge may inquire into the facts supporting the prior conviction to determine under which of the alternative elements the defendant was convicted. If the court, after that analysis, determined that the defendant was convicted for breaking and entering into a building, as opposed to an automobile, that conviction would qualify under the ACCA. *See id.*

The modified categorical approach is inappropriate in situations in which a statute defines a crime in terms of alternative means of committing the same crime. *Mathis*, 136 S. Ct. at 2256. The *Mathis* court considered a burglary statute that prohibited unlawfully entering an "occupied structure" with "the intent to commit a felony, assault or theft therein." Iowa Code § 713.1 (1989). The state criminal code defined "occupied structure" as "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for

11

overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value."  Iowa Code Ann. § 702.12.  The Court examined state law and determined that a jury need not determine the type of "occupied structure" in which the defendant committed the offense. *Mathis*, 136 S. Ct. at 2255.  For example, there was no need to determine whether the defendant was convicted of larceny from a "building" or, for example, a "water or air vehicle."  *Id.*  The different types of occupied structures were thus not alternative elements of a crime, but alternative means of means of committing the same crime.  *Id.* at 2256.  Accordingly, the lower court committed error when it applied the modified categorical approach to determine whether the conviction was a violent felony.  Because the Iowa statute was, categorically, broader than the generic definition of burglary, the conviction was determined to be a non-qualifying offense. *Id.* at 2257.

Even if the modified categorical approach is employed, a court may not use the particular facts of the prior conviction to enhance the defendant's sentence.  *Mathis*, 136 S. Ct. at 2253. The underlying facts of conviction may only be used to "determine which elements played a part in the defendant's conviction."  *Id.* (quoting *Descamps*, 133 S. Ct. at 2285) (internal quotation marks and alterations omitted).  The Court in *Mathis* summed up the modified categorical approach:

> In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque . . . It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

*Mathis*, 136 S. Ct. at 2253-54 (internal citations omitted).

12

3.  *Residual Clause*

On June 26, 2015, the Supreme Court held that the Residual Clause was void for vagueness under the Due Process Clause of the Fifth Amendment to the United States Constitution.  *Johnson*, 135 S. Ct. at 2557.  Though new constitutional rules of criminal procedure are not applicable to cases that have become final before the new rule is in effect, *see Teague v. Lane*, 489 U.S. 288, 310 (1989), a new rule will be retroactive if it is determined to be a "new substantive rule."  *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).  On April 18, 2016, the Court declared that *Johnson* announced a new "substantive rule that has retroactive effect in cases on collateral review."  *Welch*, 136 S. Ct. at 1268.  The Court's holding in *Welch* requires me to evaluate whether Wiggan was sentenced under the now-unconstitutional Residual Clause.  Wiggan's 180-month sentence will be unconstitutional if I determine that he was sentenced based on three prior convictions that failed to qualify, categorically, under either the Elements Clause or Enumerated Felonies Clause.

4.  *Sentencing Hearing and Subsequent Appeal*

At Wiggan's sentencing on June 1, 2012, I began by recognizing that Wiggan's prior convictions could possibly fall into either the Elements Clause or Residual Clause of section 924(e)(2)(B).  Sentencing Hr'g Tr. at 37, *United States v. Wiggan*, No. 3:09-cr-51 (SRU) (doc. # 151) ("Tr.").  Then, relying on court documents attached as exhibits to the government's supplemental memorandum in aid of sentencing, I examined four of Wiggan's prior convictions to determine whether they were qualifying offenses under the ACCA.  First, I found that Wiggan's two robbery convictions in the first degree, under Conn. Gen. Stat. § 53a-134, "categorically satisfy the definition of violent felony under the ACCA."  Tr. at 39.  Second, using the modified categorical approach to determine under which subsection Wiggan was convicted, I

13

found that his conviction for assault on a peace officer, in violation of Conn. Gen. Stat. § 53a-167c(a)(1), qualified as "a violent felony within the meaning of the ACCA."  Tr. at 40.  Finally, I found that Wiggan's conviction for conspiracy to commit robbery in the first degree was a violent felony under the ACCA because it "necessarily involved the threatened use of force and involved serious potential risk of physical injury to another."  Tr. at 41.  Finding four qualifying felonies, I declined to consider whether Wiggan's other convictions qualified as violent felonies under the ACCA.  Tr. at 42.  As a result of those determinations, I found that the ACCA's mandatory sentence enhancement applied and I sentenced him to the mandatory minimum period of incarceration of 180 months.

At the sentencing hearing, I made two errors.  First, I did not clarify the exact manner in which each prior conviction qualified as a violent felony.  The only conviction for which I necessarily relied on the Residual Clause was the conviction for conspiracy to commit robbery in the first degree.  *See* Tr. at 41 (tracking the language of the Residual Clause in concluding that conspiracy to commit robbery in the first degree was categorically a violent felony).  Second, I did not fully explain the manner in which I was using court documents to determine whether a conviction was a qualifying felony.  Looking at the transcript, it is possible to conclude that I misapplied the modified categorical approach by examining court documents without or prior to determining that the statute was divisible.

Perhaps because of those ambiguities, Wiggan appealed his sentence.  In affirming the sentence, the Second Circuit held that Wiggan's prior convictions qualified as violent felonies under the ACCA and supported the mandatory minimum 180-month sentence I imposed.  *United States v. Wiggan*, 530 F. App'x 51, 58 (2d Cir. 2013).  The Court held that Wiggan's two convictions for robbery in the first degree "[fell] squarely within the [Elements] prong of the

definition of 'violent felony[.]'" *Id.* at 57.  The Court then held that Wiggan's conviction for assault on a peace officer qualified as a violent felony because it was a crime that "can end in a confrontation leading to violence . . . ." *Id.* at 58 (quoting *Sykes v. United States*, 131 S. Ct. 2267, 2276 (2011)).  Though the Court did not specify the basis for its ruling that assault on a peace officer was categorically a violent felony, the conclusion that it relied on the Residual Clause is unavoidable.

First, the Court focused on the circumstances in which the crime of assault on a peace officer would arise rather than its specific elements.  *See Villanueva*, 2016 WL 3248174, at *6 (failure to discuss, in detail, elements of crime, weighs in favor of concluding that prior conviction was found to qualify under Residual Clause).  Rather than concluding, as it did with respect to first-degree robbery, that assault on a peace officer contained "as an element, the use, attempted use, or threatened use of force," *see* 18 U.S.C. § 924(e)(2)(B)(i), the Court held that it was a violent felony because it could "end in confrontation leading to violence[,]" *Wiggan*, 530 F. App'x at 58.  The analysis of the crime's potential to lead to violence tracks the Residual Clause's definition of violent felony as a crime that "presents a serious potential risk of injury to another[,]" 18 U.S.C. § 924(e)(2)(B)(ii).

Second, in concluding that assault on a peace officer was a qualifying offense, the Court relied solely on cases in which a statute was determined to fall within the Residual Clause (or comparable statutory provision).  *See Wiggan*, 530 F. App'x at 57-58 (citing *United States v. Brown*, 629 F.3d 290, 296 (2d Cir. 2011); *Sykes*, 131 S. Ct. at 2276; *Canada v. Gonzales*, 448 F.3d 560, 568 (2d Cir. 2006)).  The Court would have no reason to cite those cases if in fact it held that assault on a peace officer qualified under the Elements Clause as opposed to the Residual Clause.

15

Though I did not specify which of the ACCA clauses I relied upon in sentencing Wiggan to 180 months' imprisonment, it is clear that his sentence was upheld based on a determination that he had three qualifying convictions—one of which qualified under the Residual Clause. Because it is constitutional error to be sentenced based on a prior conviction that qualified under the Residual Clause, Wiggan has shown, by a preponderance of the evidence, that he is entitled to have his sentence reconsidered in light of *Johnson*.

B. <u>Actual Prejudice</u>

Notwithstanding the fact that Wiggan was sentenced in an unconstitutional manner, the government argues that Wiggan's section 2255 petition should be denied because he has failed to show actual prejudice as a result. Though I was not required to look beyond the Residual Clause at the time of Wiggan's initial sentence, the government argues that, had I done so, I would have found that Wiggan had at least three prior violent felonies under the Elements Clause. If that is the case, any error at sentencing was harmless and Wiggan is not entitled to relief. Thus, I must consider whether at least three of Wiggan's prior convictions qualify as violent felonies under the Elements clause.

1. *First-Degree Robbery (Two Convictions)*

As I have already discussed, a portion of my error at Wiggan's initial sentencing hearing was remedied by the Second Circuit's holding that Connecticut's first-degree robbery statute falls "squarely within the [Elements Clause] of the definition of 'violent felony[.]'" *Wiggan*, 530 F. App'x at 57. In doing so, the Second Circuit made clear that Wiggan's first-degree robbery convictions qualified under the Elements Clause, not the Residual Clause. *Id.* Accordingly, *Johnson*'s pronouncement of a new substantive constitutional rule has no effect on the determination that Wiggan's robbery convictions qualify as violent felonies. *Johnson*, 135 S. Ct.

16

at 2563 ("[*Johnson*] does not call into question . . . the remainder of [the ACCA's] definition of violent felony."); *see also Belk v. United States*, 2016 WL 1587223, at *1 (2d Cir. 2016) (denying relief because "[t]here is no evidence that Petitioner's sentence was enhanced under the provision of the ACCA that was found unconstitutional in *Johnson*").  I need not reconsider whether first-degree robbery properly falls under the Elements Clause definition of violent felony because it has already been determined and Wiggan has failed to establish constitutional error in that determination.  *See Belk*, 2016 WL 1587223, at *1.[8]

Even if *Johnson* permits me to reconsider whether first-degree robbery qualifies as a violent felony under the Elements Clause, I decline to do so.  First, Wiggan's Amended Petition does not even raise the argument.  *See* Amended Petition at ¶ 13 (identifying only the assault and conspiracy convictions as improperly classified as violent felonies).  Second, to the extent I would permit Wiggan to raise such an argument by means of an Amicus Brief filed on his behalf, such an argument is unavailing.

Wiggan's Amicus Brief, relying on *Johnson v. United States*, 559 U.S. 133 (2010) ("*Curtis Johnson*"), contends that Connecticut's first-degree robbery does not qualify as a violent felony under the Elements Clause because it is possible to commit the crime using a degree of force below that which is required under section 924(e)(2)(B)(i).  Amicus Brief at 17-18.  In *Curtis Johnson*, the Supreme Court held the use of the phrase "'physical force' means *violent* force—that is force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140 (emphasis in original).  In effect, Wiggan argues that Connecticut's

---

[8] The constitutional error in Wiggan's prior sentence is that it was based, in part, on convictions that were determined to qualify as ACCA predicate felonies under the Residual Clause.  Those convictions were (1) assault on a peace officer and (2) conspiracy to commit robbery in the first degree.  Accordingly, those convictions are the only ones that need to be evaluated to determine whether, absent reliance on the Residual Clause, they still qualify as violent felonies.

robbery statute punishes uses of physical force that would not be considered "violent" after *Curtis Johnson*.

Unfortunately for Wiggan, that argument was not raised on direct appeal notwithstanding the fact the *Curtis Johnson* was decided in 2010, two years prior to his initial sentence and almost three years prior to his direct appeal.  A section 2255 petition may not be used as a substitute for direct appeal.  *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir. 2007)).  A court may only consider a newly raised argument that the defendant failed to raise on direct review if the defendant can show (1) good cause to excuse the default and prejudice, or (2) actual innocence.  *See id.*

Here, Wiggan has failed to make a showing of good cause for failure to raise the argument on direct appeal.  There is, however, an argument that Wiggan may able to show actual innocence (though neither Wiggan nor the Amicus Brief raises the issue).  Arguably, Wiggan has shown actual innocence because, to the extent he can show that his prior convictions are not qualifying felonies under the ACCA, he is actually innocent of a violation of 18 U.S.C. § 924(e)(1) (proscribing increased penalties for a defendant with three previous qualifying convictions).

Nevertheless, I need not evaluate whether Wiggan has established actual innocence that permits him to advance an argument he failed to raise on direct appeal.  Even if I excused Wiggan's failure to raise such argument on direct appeal, I would be foreclosed from holding that Wiggan's first-degree robbery conviction is not categorically violent under the Elements Clause.  On direct appeal, the Second Circuit considered that question and held that the statute fell "squarely within the [Elements Clause] of the definition of 'violent felony[.]'"  *Wiggan*, 530 F. App'x at 57.  The law of the case doctrine "requires a trial court to follow an appellate court's

18

previous ruling on an issue in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations omitted).  If I were to hold that Connecticut's first-degree robbery statute is not a violent felony under the Elements Clause, such a holding would be in direct conflict with the Second Circuit's prior ruling on the same issue.  Accordingly, I do not reconsider that ruling and hold that Wiggan's two first-degree robbery convictions qualify as violent felonies under section 924(e)(2)(B)(i).[9]

### 2. *Assault on Peace Officer*

As I have already discussed, Wiggan has proved, by a preponderance of the evidence, that he was subject to an ACCA sentence enhancement based on a conviction under Conn. Gen. Stat. § 53a-167c(a)(1) (assault on peace officer) that was held to be a qualifying offense under the Residual Clause.  *See Wiggan*, 530 F. App'x at 57-58.  Accordingly, Wiggan has established constitutional error under *Johnson* and is entitled to relief if he is able to show actual prejudice.

The government argues that Wiggan has failed to show actual prejudice because his conviction for assault on a peace officer qualifies as a violent felony under the Elements Clause. At the time of Wiggan's conviction, section 53a-167c provided, in relevant part:

> A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . . from performing his duty, and while such peace officer . . . is acting in the performance of his or her duties, (1) he causes physical injury to such peace officer . . . .

---

[9] The continued vitality of the Second Circuit's holding regarding Connecticut's first-degree robbery statute is supported by a recent ruling, clarifying that the Court in *Curtis Johnson* "did *not* construe § 924(e)(2)(B)(i) to require that a particular quantum of force be employed or threatened to satisfy its physical force requirement." *Hill*, 2016 WL 4120667, at *5 (emphasis in original).  Rather, "physical force . . . means simply . . . force capable of causing physical pain or injury to another person." *Id.* (internal quotation marks omitted). In order for a statute identifying the "use of force" as an element of the offense to be considered categorically nonviolent, "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to [nonviolent conduct]." *Id.* at *4 (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  Thus, a defendant convicted under a statute requiring the "use of force" who seeks to challenge his conviction under the ACCA "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." *Id.* (internal citations and quotation marks omitted).  "The categorical approach must be grounded in reality, logic, and precedent, not flights of fancy." *Id.* (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013)).

Conn. Gen. Stat. § 53a-167c(a)(1) (1997).  The parties agree that section 53a-167 is not categorically a violent felony in its entirety.  *See Petrillo v. United States*, 147 F. Supp. 3d 9, 17 (D. Conn. 2015).  Because each subsection contains alternative elements—any one of which is necessary and sufficient to establish a conviction under the statute—the modified categorical approach is used to determine under which portion of the statute Wiggan was convicted.  *See Descamps*, 133 S. Ct. at 2283-84.  At his initial sentencing, I employed the modified categorical approach to determine that Wiggan was convicted under subsection (a)(1).  That finding was affirmed on appeal.  *Wiggan*, 530 F. App'x at 57 n.2.  Having determined that Wiggan was convicted under subsection (a)(1), I must then examine—without referring back to the facts of conviction—whether that subsection proscribes conduct that is categorically violent under the Elements Clause.  *See Mathis*, 136 S. Ct. at 2253.

A crime is considered a violent felony under the Elements Clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  18 U.S.C. § 924(e)(2)(B)(i).  The level of physical force applied must be "*violent* force—that is force capable of causing physical pain or injury to another person."  *Curtis Johnson*, 559 U.S. at 140 (emphasis in original).  If a crime's elements do not require the use of force against another, or do not require a level of force "capable of causing physical pain or injury to another," that crime will not be considered a violent felony under the Elements Clause.  *Id.*

The elements of a section 53a-167c(a)(1) offense are: "(1) intent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer."  *State v. Turner*, 91 Conn. App. 17, 22 (2005).  Though assault on a peace officer is a specific intent crime, the only intentional conduct required is the "intention to interfere with the performance of an officer's duties[.]"  *State v.*

*Pagano*, 23 Conn. App. 447, 448 n.1 (1990) (internal quotation marks and citations omitted). Unlike Conn. Gen. Stat. § 53a-60(a) (second degree assault), assault on a peace officer does not require the *intentional* infliction of physical injury as an element of the offense. *See id.* (examining requisite intent elements in each statute).

The government argues that the second element of assault on a peace officer (infliction of physical injury) brings the crime within the definition of violent felony under the Elements Clause because it is an element that requires the "use . . . of physical force against the person of another." Gov't Resp. at 20. Wiggan responds by distinguishing between an element that requires a defendant to use physical force on another and an element that merely requires injury to be caused as a result of the defendant's conduct.

In *Chrzanoski*, the Second Circuit had occasion to consider the difference between an element requiring the "use of physical force" and one requiring the "causation of an injury." *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). The Court was tasked with determining whether Conn. Gen. Stat. § 53a-61(a)(1)[10] (third degree assault) qualified as a crime of violence under 18 U.S.C. § 16(a)[11]. *Id.* at 192. Concluding that Connecticut's third degree assault statute was not categorically a crime of violence under subsection (a) of 18 U.S.C. § 16, the Court held that "the intentional causation of injury does not necessarily involve the use of force." *Id.* at 195 (citing *Persaud v. McElroy*, 225 F. Supp. 2d 420, 421 (S.D.N.Y. 2002)).

---

[10] Section 53a-61(a) of the Connecticut General Statutes provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon." Conn. Gen. Stat. § 53a-61(a).

[11] The term "crime of violence," as defined by 18 U.S.C. § 16, means:

    (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
    (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In support of its holding, the Court recognized that "[a]n element of a crime is a fact that must be proven beyond a reasonable doubt to obtain a conviction." *Chrzanoski*, 327 F.3d at 192 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000)).  The "use of force" could not be considered an element of third degree assault because "[n]othing in the definition . . . [of the statute] requires the government to prove that force was used in causing the injury." *Id.* at 193. Rather, the government would be able to convict a defendant merely by showing that the injury was caused "not by physical force, but by guile, deception, or even deliberate omission." *Id.* at 195.

Like Connecticut's crime of assault in the third degree, the crime of assault on a peace officer does not require the government to prove that the defendant applied any force against the officer.  *See Turner*, 91 Conn. App. at 22 (listing elements of crime and not mentioning the "use of force"); *see also Canada*, 448 F.3d at 568 (recognizing, in dicta, that "a person could theoretically violate CGS § 53a-167c(a)(1) without using force"); *Villanueva*, 2016 WL 3248174, at *15 (concluding that section 53a-167c(a)(1) was not a violent felony under the Elements Clause because it did not have, as an element, the "use of force").  If the government need not prove that the defendant used "force" in order to obtain a conviction, the "use of force" may not be considered an element of the offense.  *See Chrzanoski*, 327 F.3d at 192 (citing *Apprendi*, 530 U.S. at 477).

The government argues that "causing" injury requires the "use of physical force."  Gov't Resp. at 17.  In support of its argument, the government cites *United States v. Walker*, a case in which the Second Circuit held that a defendant's conviction under New York law for attempted assault in the second degree constituted a violent felony under the ACCA.  442 F.3d 787 (2d Cir. 2006).  The Second Circuit reasoned that the defendant's attempt to "cause physical injury" by

22

means of a deadly weapon or instrument was "[an] (attempt to) use 'physical force'… *and* necessarily creates 'a serious potential risk of physical injury to another.'" *Id.* at 788.

First, the Second Circuit's use of the phrase "necessarily creates a 'serious potential risk of physical injury to another[,]'" *id.*, indicates that it was relying Residual Clause in concluding the crime was categorically violent.  Second, and more importantly, the statute at issue in *Walker* does not resemble the statute at issue in the instant case.[12]  The statute in *Walker* required both the intent to cause physical injury and the causation of physical injury "by means of a deadly weapon or a dangerous instrument."  The statute in this case, section 53a-167c(a)(1), merely requires the "infliction of physical injury."  *Turner*, 91 Conn. App. at 22.  The defendant neither needs to intend to cause physical injury nor use anything—much less a deadly weapon or dangerous instrument—to cause that injury.  *Pagano*, 23 Conn. App. at 448 n.1; Connecticut Judicial Branch Criminal Jury Instructions 4.3-3 (Element 4), *available at* http://www.jud.ct.gov/ji/criminal/criminal.pdf (last visited July 28, 2016).  In fact, the statute does not require the defendant to "use" anything at all.  *See Turner*, 91 Conn. App. at 22.

The government also cites *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014), for the proposition that *Chrzanoski* is no longer good law.  The defendant in *Castleman* had argued that his state assault conviction, which prohibited "intentionally . . . caus[ing] bodily injury to another," Tenn. Code Ann. § 31-13-101(a)(1), did not qualify as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) because it did not involve have, "as an element, the use of physical force."  *Castleman*, 134 S. Ct. at 1409 (internal quotation marks, citations, and alterations omitted).  The Supreme Court disagreed, holding that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force."  *Id.* at 1414.  The Court

---

[12] Nor does the statute under consideration here resemble the statute construed in another case cited by the government.  *See United States v. Anderson*, 695 F.3d 390, 400 (6th Cir. 2012) (construing statute that required proof of physical harm "by means of a deadly weapon or dangerous ordnance").

focused on the fact that "'physical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'"  *Id.* at 1414 (quoting *Johnson*, 559 U.S. at 138).  Furthermore, it held that "the common-law concept of 'force' encompasses even its indirect application."  *Id.*

Irrespective of whether *Castleman* overruled *Chrzanoski*, something I do not examine today, the government's reliance on *Castleman* is unavailing.  Like the statute in *Taylor*, the assault statute in *Castleman* contemplates the "knowing or intentional causation of bodily injury."  *Id.*  Such injury, the Court concluded, could only arise as a result of some level physical force exerted by the defendant—whether that defendant applied the force directly, by punching his victim, or indirectly, by "sprinkle[ing] poison in a victim's drink."  *Id.*  at 1415 (internal quotation marks and citations omitted).  In either case, the defendant is employing some level of force for the purpose of causing injury to the victim.

The Court in *Castleman* did not consider a statute like section 53a-167c(a)(1) in which the infliction of physical injury element need not be intentional.  *See Turner*, 91 Conn. App. at 22; Criminal Jury Instructions 4.3-3 (Element 4).  Though the statute in *Castleman* required a defendant to intentionally employ a device that causes injury to the victim, section 53a-167c(a)(1) does not require a defendant to employ anything at all.  *See id.*; *Canada*, 448 F.3d at 569.  Though the intentional infliction of injury may, after *Castleman*, amount to the "use of force," it does not follow that "use of force" is defined as any intentional action that happens to cause physical injury to another.  *See Persaud*, 225 F. Supp. 2d. at 422.[13]

For example, a defendant may be convicted under section 53a-167c(a)(1) if he intentionally performed some act or omission to evade a police officer and the officer was

---

[13] The same analysis applies with respect to another case relied upon by the government.  *See United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016) (construing statute that required the defendant to "intentionally, or knowingly . . . cause physical injury . . .").

injured as a result.  *See Turner*, 91 Conn. App. at 22.  All of the elements of the statute would be

met by a scenario in which a defendant engages an officer in pursuit and the officer falls down

and injures himself during the course of that pursuit.  *Cf. Persaud*, 225 F. Supp. 2d. at 422

(construing New York statute with similar elements and reaching same conclusion).  Because

engaging a police officer in pursuit does not require the "use of force" against that officer,

assault on a peace officer does not have, as an element, the "use . . . of physical force against the

person of another," as is required by section 924(e)(2)(B)(i).

Furthermore, even if section 53a-167c(a)(1) had, as an element, the "use of physical

force" under the common-law definition of "force" as defined by *Castleman*, there is nothing to

suggest that the statute requires a level of physical force "capable of causing physical pain or

injury to another person," *Curtis Johnson*, 559 U.S. at 140.  *See Castleman*, 134 S. Ct. at 1411-

12.  The Court in *Castleman* made great efforts to distinguish the definition of "physical force"

under section 921(a)(33)(A), the statute at issue in that case, from the definition of the "physical

force" used in section 924(e)(2)(B)(i).  *Id.* at 1410-12.  Unlike section 921(a), which was

interpreted to rely on the common-law definition of "force . . . [that was] satisfied by even the

slightest offensive touching," section 924(e) requires the use of "violent force."  *Id.* (citing *Curtis

Johnson*, 559 U.S. at 140).  Though intentionally causing physical injury might amount to the

"use of physical force" under section 921(a), it is possible that physical injury could be caused

by the use of nonviolent force.  *See Chrzanoski*, 327 F.3d at 195.  Accordingly, even if some

amount of force were required to violate section 53a-167c(1)(a), there is nothing to suggest that

the level of force required rises to the level of "violent force" required under the Elements Clause

of section 924(e)(2)(B)(i).  *See Curtis Johnson*, 559 U.S. at 140; *Jones v. United States*, ⸺ F.3d

⸺, 2016 WL 3923838, at *6 (2d Cir. July, 21 2016).

Finally, at the end of its brief in opposition to the Amended Petition, the government

asserts that Wiggan is procedurally barred from making *any* arguments that rely on *Curtis

Johnson* because he failed to raise a *Curtis Johnson* claim either at sentencing or on direct

appeal.  Gov't Resp. at 20.  The government presses too hard on the procedural bar.  Though it is

true that Wiggan did not rely on *Curtis Johnson* at either sentencing or on direct appeal, and

therefore might not be able to rely on that decision to support a claim of error at sentencing, he is

not precluded from relying on *Curtis Johnson* in opposition to the government's argument that

he suffered no actual prejudice from the constitutional error.

As discussed in detail above, Wiggan's sentence was based on a finding that his assault

on a peace officer conviction qualified as a violent felony under the Residual Clause.  *Wiggan*,

530 F. App'x at 58.  That finding has since been declared unconstitutional.  *Johnson*, 135 S. Ct.

at 2557.  Accordingly, Wiggan has already made a preliminary showing that he is entitled to

relief under section 2255(a).  The only reason I continue to evaluate Wiggan's prior convictions

is that the government contends that the constitutional error was harmless.  The government

asserts that classification of Wiggan's prior convictions under the Residual Clause was harmless

because at least three of those convictions otherwise qualify under the Elements Clause—

something that was not fully litigated at his prior sentencing hearing or on direct appeal.

Wiggan is not barred from opposing the government's argument by citing to *Curtis

Johnson.*  Even if he might otherwise be procedurally barred from making such arguments, he

has established cause for failure to make them—specifically that, at the time of his initial

sentence and direct appeal, he had no incentive to raise arguments unrelated to the Residual

Clause.  *See Sustache-Rivera v. United States*, 221 F.3d 8, 14 n.9 (1st Cir. 2000) (recognizing

that lack of incentive to raise an issue may satisfy "cause" requirement to avoid procedural bar);

*see also United States v. Smith*, 250 F.3d 1073 (7th Cir. 2001) (Wood, *J.*, joined by Rovner, *J.*, and Williams, *J.*, dissenting from denial of rehearing en banc) (petitioner may establish "cause" based on futility at the time of prior sentencing).  In *Smith*, U.S. Circuit Judge Diane Wood noted the potential perverse incentives that would follow a contrary holding.  *See id.* at 1077 ("defense counsel will have no choice but to file one 'kitchen sink' brief after another, raising even the most fanciful defenses that could be imagined based on long-term logical implications from existing precedents").

Similarly, it would be inconceivable to hold that Wiggan was required to argue that his prior conviction did not qualify under the Elements Clause even though I was going to make my decision based on whether it qualified under the Residual Clause.  Accordingly, Wiggan is not procedurally barred from relying on *Curtis Johnson* to argue that his assault on a peace officer conviction is not a violent felony under the Elements Clause.

In sum, Wiggan was convicted of assault on a peace officer in violation of section 53a-167c(a)(1).  Though one of the elements of that statute is the "the infliction of physical injury to the peace officer," *Turner*, 91 Conn. App. at 22, non-intentional causation of injury does not require the "use of force."  *Canada*, 448 F.3d at 568; *Chrzanoski*, 327 F.3d at 194; *Villanueva*, 2016 WL 3248174, at *15; *Persaud*, 225 F. Supp. 2d at 421.  Because section 53a-167c(a)(1) does not require, as an element, the use, attempted use, or threatened use of physical force, it is not a qualifying felony under the Elements Clause of section 924(e)(2)(B)(i).

### 3.   *Conspiracy to Commit Robbery*

As I have already discussed, Wiggan has proved that he was subject to an ACCA sentence enhancement based on a prior conviction for conspiracy to commit robbery in the first degree, in violation of Conn. Gen. Stat. § 53a-48 and § 53a-134(a)(4), which was found to be a

violent felony under the Residual Clause. *See* Tr. at 41 (tracking language of Residual Clause and concluding that conspiracy to commit robbery was a violent felony). Accordingly, Wiggan has established constitutional error under *Johnson* and is entitled to relief if he is able to show actual prejudice. Wiggan can show actual prejudice if he can establish that his conviction for conspiracy to commit robbery does not otherwise qualify as a violent felony under the Elements Clause.

The conspiracy statute in Connecticut under which Wiggan was convicted provides that "a person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." Conn. Gen. Stat. § 53a-48(a). In order to find a defendant guilty of a conspiracy, the jury must find three elements: (1) an agreement between the defendant and one or more persons to engage in criminal conduct constituting the object of the conspiracy; (2) an overt act in furtherance of the subject of the agreement by any one of those persons; and (3) the intent of the defendant to engage in the criminal conduct constituting the object of the conspiracy. Criminal Jury Instructions 3.3-1.

On its face, none of the elements of the crime of conspiracy requires the "use, attempted use, or threatened use of physical force against the person of another," section 924(e)(2)(B)(i). The government does not attempt to argue the contrary, but rather argues that conspiracy qualifies as a violent felony because it subsumes the elements of the underlying offense. Gov't Resp. at 13.

In support of its contention, the government cites *State v. Padua*, 273 Conn. 138, 166 (2005), which held that "proof of a conspiracy to commit a specific offense requires proof that

the conspirators intended to bring about the elements of the conspired offense." *Id.* (internal quotation marks, citations, and alterations omitted).  Because Connecticut law incorporates the elements of first-degree robbery in a conspiracy to commit first-degree robbery, and because first-degree robbery is a violent felony under the ACCA, the government argues that a conspiracy conviction qualifies as a violent felony under the ACCA.  Gov't Resp. at 12.

The government finds support in *United States v. Preston*, a case in which the Third Circuit ruled on a nearly identical statute and held that a Pennsylvania conviction for conspiracy to commit robbery was a violent felony.  910 F.2d 81, 86 (3d Cir. 1990).  The Third Circuit reasoned that the "elements of criminal conspiracy to commit robbery . . . subsume the elements of robbery, which is a violent felony [under] § 924(e)."  *Id.*[14]

More recently, however, other circuits have come to the opposite conclusion.  *See United States v. Gore*, 636 F.3d 728 (5th Cir. 2011).  In *Gore*, the court held that conspiracy to commit aggravated robbery was not a "violent felony" under the Elements Clause because a jury could convict a defendant of the crime "without finding that physical force against the person of another was actually used or that there was an attempted or threatened use of such force."  *Id.* at 731.

The Second Circuit has not addressed the issue.  Nevertheless, it is without hesitation that I conclude that conspiracy to commit an offense does not qualify as a violent felony simply because the underlying offense, if completed, would require the use of physical force against

---

[14] At oral argument, the government also relied on *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991). Like *Preston*, *DiSomma* was decided before the categorical approach was clearly defined.  Moreover, it was pre-*Curtis Johnson* and was interpreting the term "crime of violence," which was defined as including any offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  After *Johnson*, it is clear that crimes that involve the potential "risk" of violence as opposed to the use of physical force are not qualifying convictions under section 924(e).  *Johnson*, 135 S. Ct. 2551.  Finally, in *DiSomma*, the parties "agreed" that the offense was a "crime of violence."  *DiSomma*, 951 F.2d at 496-97.  For those reasons, *DiSomma* does not control this case.

another person.  A jury need only find that the defendant "intended to bring about the elements of the conspired offense." *Padua*, 273 Conn. at 166.  "Intent" to use physical force does not amount to the actual use, threatened, or attempted use of physical force.  If Congress wished to give sentence enhancements based on the level of force the defendant intended to use, the Elements Clause would read "use, attempted use, threatened use, *or intended use* of physical force."  Because section 924(e)(2)(B)(i) does not enhance a defendant's sentence based on what the individual intended to do, I follow the Fifth Circuit in *Gore* and hold that conspiracy to commit robbery in the first degree does not constitute a "violent felony" under the Elements Clause.

To the extent that the government argues that the overt act requirement of Connecticut's conspiracy statute requires the "use, attempted, or threatened use of physical force," such an argument is belied by the fact that an "overt act is any step, action, or conduct that is taken to achieve or further the objective of the conspiracy."  Criminal Jury Instructions 3.3-1 (Element 2).  There is nothing to suggest that the overt act requires the use, attempted, or threatened use of physical force.  In a drug conspiracy, possession of narcotics is considered an overt act.  *State v. Elijah*, 42 Conn. App. 687, 697 (1996).  Similarly, renting a getaway car in furtherance of a robbery conspiracy would presumably qualify as an overt act even though car rental does not involve the "use, attempted, or threatened use of physical force."  Accordingly, the fact that conspiracy to commit robbery requires an overt act does not categorically render it a violent felony under the ACCA.

## IV.    Conclusion

Wiggan has established that he received a sentence based on a finding that some of his prior convictions qualified as violent felonies under the ACCA's Residual Clause.  That sentence

was in error.  Because the government failed to establish that Wiggan had at least three prior convictions that would qualify as violent felonies under the Elements Clause, Wiggan has shown that actual prejudice resulted from his prior sentencing proceeding.  Accordingly, Wiggan's amended section 2255 petition (doc. # 15) is granted and the matter shall be set down for a prompt resentencing.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of August 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge